UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | |
|---|---|
| MICHAEL JOHN SCHUNN, | CASE NO. 1:20-CV-01779-PAG |
| Plaintiff, | JUDGE PATRICIA A. GAUGHAN |
| vs. | MAGISTRATE JUDGE DARRELL A. CLAY |
| COMMISSIONER OF SOCIAL SECURITY, | **REPORT AND RECOMMENDATION** |
| Defendant. | |

## INTRODUCTION

Plaintiff Michael John Schunn filed a Complaint against the Commissioner of Social

Security ("Commissioner") seeking judicial review of the Commissioner's decision denying

supplemental security income ("SSI"). (ECF #1). The District Court has jurisdiction under 42

U.S.C. §§ 1383(c) and 405(g). On August 12, 2020, pursuant to Local Rule 72.2, this matter was

referred for preparation of a report and recommendation, and was subsequently reassigned to me

pursuant to General Order 2021-06. (Non-document entry dated May 20, 2021). Following review,

and for the reasons stated below, I recommend the District Court **REVERSE** the Commissioner's

decision and **REMAND** this matter for additional proceedings consistent with this

recommendation.

## PROCEDURAL BACKGROUND

Mr. Schunn filed for SSI on May 31, 2018, alleging a disability onset date of August 30,

2016. (Tr. 214). His claim was denied initially on August 22, 2018 and on reconsideration on

December 19, 2018. (Tr. 129, 148). He then requested a hearing before an administrative law judge. (Tr. 166-68). Mr. Schunn (represented by counsel), and a vocational expert ("VE") testified at a hearing before the ALJ on August 28, 2019. (Tr. 37). In a September 10, 2019 written decision, the ALJ determined Mr. Schunn was not disabled. (Tr. 17-32). The Appeals Council denied Mr. Schunn's request for review, making the hearing decision the final decision of the Commissioner. (Tr. 1-3; *see* 20 C.F.R. §§ 416.1455, 416.1481). Mr. Schunn timely filed this action on August 12, 2020. (ECF #1).

FACTUAL BACKGROUND

I.    ADMINISTRATIVE HEARING

The following summarizes the testimony of Mr. Schunn and VE Timothy Whitford, presented during the hearing before the ALJ.

Mr. Schunn previously worked as a janitor for Mr. Rooter. (Tr. 41). He stopped working because of his migraines. (Tr. 42). When he gets migraines, Mr. Schunn experiences blindness and must sit or lie down in a dark room. (Tr. 42, 44). Mr. Schunn gets migraines four or more times per week, sometimes twice a day. (Tr. 43). The migraines last for several hours, up to a half day, at a time. (Tr. 44). Mr. Schunn takes Tylenol for the pain, but it does not work. (*Id.*). Mr. Schunn is unsure what triggers the migraines, but has had them for as long as he can remember. (*Id.*).

Mr. Schunn was diagnosed with diabetes about eight years before the hearing. (Tr. 45). He has difficultly controlling his glucose levels. (*Id.*). Me. Schunn uses insulin injections and tries to control his blood sugar through dieting but is often unsuccessful. (*Id.*). Mr. Schunn experiences glucose levels of 200 mg/dL or more every couple of days. (Tr. 46). When his glucose levels get

that high, Mr. Schunn gets dizzy and fatigued. (*Id.*). He has pain, numbness, and tingling in his feet due to diabetic neuropathy. (Tr. 46-47).

Mr. Schunn's back pain, rated at an eight or nine on the pain scale and constant in frequency, starts in the middle of his lower back and shoots down his legs and into his toes. (Tr. 47-48). He takes Tylenol and Lyrica. (Tr. 48). The pain is worse when Mr. Schunn bends over or tries to lift something. (*Id.*). He tries to do stretches but they do not work. (*Id.*).

Mr. Schunn has taken Coumadin since his cardiac surgery in 2013. (Tr. 48-49). Every two or three days, Mr. Schunn experiences atrial fibrillation. (Tr. 49). His heart starts racing and will sometimes last all day. (*Id.*). When this occurs, Mr. Schunn sits down and tries to relax or takes deep breaths. (*Id.*). Mr. Schunn is able to do some household chores during an atrial fibrillation episode but must sit down after about five minutes of activity. (*Id.*). Mr. Schunn began experiencing depression after he underwent aortic valve surgery. (Tr. 50).

Mr. Schunn suffers from sleep apnea and uses a CPAP machine at night. (Tr. 49). He gets four, maybe five, hours of sleep per night. (*Id.*). Mr. Schunn naps for one or two hours on a daily basis. (Tr. 50).

Mr. Schunn has difficulty socializing with groups of people. (Tr. 50-51). He leaves the house a few times a week to accompany his wife, Danielle Schunn, to the store or watch his nieces and nephews play sports. (Tr. 51). On a typical day, Mr. Schunn wakes up, showers, eats breakfast, sits around and watches television, and sits or lies outside. (*Id.*). He sometimes vacuums and does the dishes, but his wife does most of the housework, including laundry. (Tr. 52).

Mr. Schunn estimates he can stand for about fifteen to twenty minutes before he must shift positions to alleviate his back pain. (*Id.*). He can walk for about ten minutes before needing to

rest. (*Id.*). He can sit for twenty to twenty-five minutes at a time. (Tr. 53). Mr. Schunn's back pain makes it difficult to navigate stairs. (*Id.*).

The VE then testified. The ALJ posed the following hypothetical and asked Mr. Whitford to determine if such an individual could perform Mr. Schunn's past relevant work: an individual of Mr. Schunn's age, education, and work history; able to perform light work; can never climb ladders, ropes, or scaffolds; can occasionally climb ramps and stairs, balance, stoop, kneel, crouch, and crawl; no concentrated exposure to temperature extremes, humidity, environmental pollutants, vibration, high background noise, or strong lighting as in a factory setting; no exposure to hazards such as heights, machinery, or commercial driving; limited to performing routine tasks in a low-stress environment; no fast-paced strict quotas or frequent duty changes involving superficial interpersonal interactions;[1] and no arbitration, negotiation, or confrontation. (Tr. 54-55). Mr. Whitford testified such an individual could not perform Mr. Schunn's past relevant work, but identified other positions, including a merchandise marker, a garment sorter, and a folding machine operator. (Tr. 55-56).

The ALJ posed the same hypothetical with the following changes: the individual would be off-task for at least twenty percent of the workday. (Tr. 56). According to the VE, such an individual could not perform Mr. Schunn's past relevant work because employers tolerate no more than a ten percent off-task rate. (*Id.*).

---

[1]     Later in the hearing, the ALJ claims he "defined superficial to incorporate the term occasional." (Tr. 62).

4

The ALJ also asked Mr. Whitford to identify jobs Mr. Schunn could perform at the sedentary level. (Tr. 57). Mr. Whitford identified three sedentary-level positions: an ink printer, a final assembler, and a dial marker. (Tr. 58).

## II.    PERSONAL AND VOCATIONAL EVIDENCE

Mr. Schunn was 35 years old at the time of his alleged onset date, and 38 years old at the time of the administrative hearing. (Tr. 108). Mr. Schunn completed his high school education. (Tr. 30). In the past, Mr. Schunn worked as a janitor for Mr. Rooter, a plumbing company. (Tr. 41).

## III.   RELEVANT MEDICAL EVIDENCE

Mr. Schunn's treatment records document multiple impairments. At birth, Mr. Schunn was diagnosed with spina bifida and underwent a craniotomy. (Tr. 312). In 2013, Mr. Schunn had surgery to replace an aortic valve. (Tr. 332). As a result, Mr. Schunn has been on Coumadin for anti-coagulation therapy since the cardiac surgery. (Tr. 332).

Mr. Schunn also has diabetes mellitus, which is characterized as well-controlled. (Tr. 320, 326-27, 335, 350, 382, 655). He checks his blood sugar levels at home and tells his doctor that it is typically 140-150 mg/dL. (Tr. 344,). Foot examinations reveal no ulcerative lesions and a normal sensory exam. (Tr. 355). However, on January 20, 2017, Mr. Schunn admitted having some numbness and tingling in his feet. (Tr. 378).

Mr. Schunn has severe obstructive sleep apnea with hypoxemia. (Tr. 343). He uses a CPAP machine and notices improved sleep with use, though he continues to experience daytime sleepiness. (Tr. 343).

Mr. Schunn also has migraines, though he has not engaged in treatment since before his alleged onset date.

## IV.  OTHER RELEVANT EVIDENCE

**Function Reports.** Mr. Schunn submitted an Adult Function Report, dated December 11, 2018, detailing the limitations caused by his medically determinable impairments. (Tr. 263-70). Mr. Schunn lives with his wife and mother-in-law. (Tr. 263). His back pain restricts his ability to bend, lift, twist, and move. (*Id.*). The associated pain makes it difficult for him to fall asleep. (Tr. 264). Mr. Schunn's migraines make it so he has difficulty remembering things, is unable to multi-task, and must be told what tasks to accomplish. (Tr. 263). Mr. Schunn's typical daily activities are limited: he eats three meals a day that someone else prepares for him and watches television. (Tr. 264). Mr. Schunn uses a claw grabber to put on pants. (*Id.*). Mrs. Schunn helps him dress. (*Id.*). He is not responsible for the care of others or pets; rather, Mr. Schunn's wife feeds and cares for their dog. (*Id.*). Mr. Schunn does not do yard work because when he gets a migraine, he must sit in a dark room for several hours. (Tr. 265). He only goes outside when it is not sunny. (*Id.*).

Mr. Schunn drives only in emergency situations. (*Id.*). Mrs. Schunn handles the household shopping, pays the household bills, and cooks Mr. Schunn's meals. (Tr. 265-66). Mr. Schunn can make sandwiches and canned soup but does not prepare more complex meals because he cannot concentrate on the task. (Tr. 266). He does not need special reminders to take care of his personal needs and grooming, but Mr. Schunn's wife fills his medications, instructs Mr. Schunn when to take them, and attends Mr. Schunn's doctor's appointments with him. (Tr. 266-67).

Around the house, Mr. Schunn cannot do any lifting, but helps with the dusting. (Tr. 266). As for hobbies, Mr. Schunn enjoys watching baseball and softball, which he does a couple times a week. (Tr. 267). Mr. Schunn also accompanies his wife to the mall. (*Id.*).

Mr. Schunn's conditions affect his ability to lift, bend, stand, concentrate, and follow instructions. (Tr. 268). He estimates he can walk about fifty feet before needing to stop and rest, must rest for a couple of minutes before he resumes walking, and is unable to pay attention for long periods of time. (*Id.*). Mr. Schunn does not finish tasks he starts, does not follow written instructions very well, and is unable to follow spoken instructions. (*Id.*). He gets along with others, including authority figures. (Tr. 269).

Mrs. Schunn completed a Third-Party Adult Function Report, dated August 1, 2019. (Tr. 293). She reports that Mr. Schunn gets migraines stemming from a birth defect. (*Id.*). Mr. Schunn gets marginal relief with lying down or sitting in a dark room until the migraine passes. (*Id.*). She notes that Mr. Schunn's back pain is constant and intractable despite physical therapy. (*Id.*).

Mrs. Schunn described Mr. Schunn's typical day: He showers, shaves, and dresses with Mrs. Schunn's help and eats the meals she prepares for him. (Tr. 294). Mr. Schunn does not prepare meals because, if a migraine comes on, he forgets to turn off the stove and oven. (Tr, 295). He tries to relax all day to alleviate the pain. (Tr. 294). Mrs. Schunn handles sorting and organizing Mr. Schunn's medications and instructs him when to take them. (Tr. 295). She helps him get ready for bed. (Tr. 294). Mrs. Schunn noted that he does not sleep well and wakes up in the middle of the night. (*Id.*).

Because Mr. Schunn's back pain and migraines limit him, Mrs. Schunn feeds, bathes, and cares for their dogs and handles the household chores and yard work. (Tr. 296). Mr. Schunn will

7

accompany her to the store once a week or every other week for about thirty minutes. (*Id.*). Mrs. Schunn handles the family finances because Mr. Schunn must be told things more than once and has limited attention. (*Id.*). Mrs. Schunn notes that Mr. Schunn does not have a lot of social skills, does not communicate well, and is often angry about the migraines and back pain. (Tr. 297).

Mrs. Schunn indicates that Mr. Schunn's medical impairments affect his ability to lift, squat, bend, stand, reach, walk, sit, kneel, climb stairs, complete tasks, concentrate, understand, follow instructions, and get along with others. (Tr. 298). Due to his back pain, he can walk for about ten minutes at a time before stopping to rest. (*Id.*). Mrs. Schunn confirms that Mr. Schunn does not finish the tasks he starts. (*Id.*). He does not follow written or spoken instructions well. (*Id.*). Mr. Schunn needs multi-step instructions to be repeated multiple times. (*Id.*).

## V. MEDICAL OPINIONS

### A. State Agency Medical Consultants

State agency medical consultants reviewed Mr. Schunn's record at the initial and reconsideration levels. At the initial level, the medical consultant completed a physical residual functional capacity assessment and determined Mr. Schunn can lift and/or carry twenty pounds occasionally, and ten pounds frequently; can stand and/or walk for about six hours in an eight-hour workday; can sit for about six hours in an eight-hour workday; can occasionally climb ramps and stairs, stoop, kneel, crouch, and crawl; can never climb ladders, ropes, or scaffolds; must avoid concentrated exposure to extreme temperatures, fumes, odors, dusts, gases, poor ventilation; and avoid all exposure to hazards such as dangerous machinery and unprotected heights. (Tr. 122-24).

Another state agency consultant, Patricia Kirwin, Ph.D., determined Mr. Schunn has moderate limitations in understanding, remembering, and applying information; interacting with

8

others; concentrating, persisting, and maintaining pace; and adapting and managing oneself. (Tr. 119). On August 29, 2016, a different ALJ found Mr. Schunn not disabled and determined he had the mental residual functional capacity to perform "simple, routine tasks with no fast-paced work, no strict production quotas, only simple work instructions and decisions, and minimal or infrequent changes in the work setting; he is limited to only occasional interaction with the public, coworkers, and supervisors." (Tr. 84). Dr. Kirwin adopted those same mental residual functional capacity limitations. (Tr. 125).

At the reconsideration level, the state agency consultants adopted the mental and physical residual functional capacity assessments performed at the initial level. (Tr. 142-44).

**B.      Joseph P. Hanna, M.D.**

In 2009, Joseph P. Hanna, M.D., opined Mr. Schunn is unable to perform many occupations due to a congenital cognitive impairment, attention deficit disorder, and chronic migraines. (Tr. 301). In 2014, Dr. Hanna completed a Physician's Medical Assessment of Ability to Do Work Related Activities. (Tr. 303-06). Dr. Hanna noted Mr. Schunn's severe pain stems from post-surgical headaches. (Tr. 303). Visual changes and sensitivity to light and sound accompany Mr. Schunn's headaches. (*Id.*).

As to Mr. Schunn's understanding and memory, Dr. Hanna opined mild limitations related to simple instructions and remembering work-like procedures, but marked limitations related to understanding, remembering, and carrying out detailed instructions. (Tr. 304). Dr. Hanna concluded Mr. Schunn was extremely limited in his ability to complete a normal workday or workweek without interruptions from psychologically based symptoms and to perform at a consistent pace without an unreasonable number and length of rest periods, markedly limited in

his ability to work in coordination with others without being distracted by them, moderately limited in his ability to complete tasks timely and sustain an ordinary routine without special supervision, and mildly limited in his ability to make simple work-related decisions. (Tr. 304). Dr. Hanna also determined Mr. Schunn was markedly limited in his ability to tolerate normal levels of stress, moderately limited in his ability to perform within a schedule, and mildly limited in his ability to make judgments on simple work-related decisions. (Tr. 305).

Dr. Hanna opined Mr. Schunn would need to lie down for two hours during the day because of his migraines. (*Id.*). Finally, Dr. Hanna concluded that Mr. Schunn's impairment substantially interferes with his ability to work on a regular and sustained basis and that he would miss three or more days of work each month because of his impairment. (Tr. 306).

C.    **Jim Bircher, M.D.**

Dr. Bircher opined that Mr. Schunn does not have substantial physical limitations but, based on a limited lumbar spine flexion due to pain and the slight difficulty exhibited when rising from the exam table, would have difficulty walking or standing for more than an hour. (Tr. 578). Dr. Bircher also filed out a Manual Muscle Testing form and noted all normal findings except Mr. Schunn was unable to perform lumbar flexion due to pain. (Tr. 582).

D.    **Janis Woodworth, Ph.D.**

On referral from the Ohio Division of Disability Determination, Mr. Schunn underwent a psychological evaluation with Janis Woodworth, Ph.D. (Tr. 564-71). Her evaluation is based on an interview with Mr. Schunn and review of his medical records. (Tr. 564). Dr. Woodworth assessed recent and remote memory, attention and concentration, and working memory. (Tr. 567).

10

Dr. Woodworth concluded that Mr. Schunn's attention and concentration for complex tasks is poor and in the average range for simple tasks, his recent memory is average but remote memory is poor, and working memory for simple tasks is in the average range but below average for complex tasks. (Tr. 569). She opined Mr. Schunn will probably have more difficulty understanding, remembering, and carrying out instructions; will have more difficulty maintaining attention and concentration, maintaining persistence and pace, to perform simple tasks and to perform multi-step tasks compared to same-age peers; will probably have more difficulty in responding appropriately to work supervisors and coworkers in a work setting; and will probably have more difficulty in responding appropriately to work pressures in a work setting. (Tr. 569-70).

## THE ALJ'S DECISION

The ALJ's decision, dated September 10, 2019, included the following findings of fact and conclusions of law:

1. The claimant has not engaged in substantial gainful activity since May 31, 2018, the application date (20 CFR 416.971 *et seq.*).

2. The claimant has the following severe impairments: migraines with a history of repaired congenital encephalocele; degenerative disc disease with history of spina bifida; atrial fibrillation with history of aortic valve replacement; hypertension; obstructive sleep apnea; diabetes mellitus; morbid obesity; depressive disorder; generalized anxiety disorder with panic; and a history of attention deficit hyperactivity disorder (ADHD) (20 CFR 416.920(c)).

3. The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 416.920(d), 416.925, and 416.926).

4. After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity (20 CFR 416.945) to perform light work as defined in 20 CFR 416.967(b), except for no climbing of ladders, ropes or scaffolds; occasional climbing of ramps and stairs; occasional balancing, stooping, kneeling, crouching and crawling; no

concentrated exposure to temperature extremes, humidity, environmental pollutants, vibration, high background noise or strong lighting, as in a factory setting; no exposure to hazards, such as heights, machinery or commercial driving; and mental limitation that he perform routine tasks in a low stress environment (no fast past, strict quotas or frequent duty changes) involving superficial interpersonal interactions (no arbitration, negotiation or confrontation) (20 CFR 416.969a).

5.  The claimant is unable to perform any past relevant work (20 CFR 416.965).

6.  The claimant was born on January 30, 1981 and was 37 years old, which is defined as a younger individual age 45-49, on the date the application was filed (20 CFR 416.963).

7.  The claimant has at least a high school education and is able to communicate in English. (20 CFR 416.964).

8.  Transferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding that the claimant is "not disabled," whether or not the claimant has transferable job skills (See SSR 82-41 and 20 CFR Part 404, Subpart P, Appendix 2).

9.  Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform (20 CFR 416.969 and 416.969a).

10. The claimant has not been under a disability, as defined in the Social Security Act, since May 31, 2018, the date the application was filed (20 CFR 416.920(g)).

(Tr. 20-31).

## STANDARD OF REVIEW

In reviewing the denial of Social Security benefits, the court "must affirm the Commissioner's conclusions absent a determination that the Commissioner has failed to apply the correct legal standards or has made findings of fact unsupported by substantial evidence in the record." *Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 528 (6th Cir. 1997). "Substantial evidence is more than a scintilla of evidence but less than a preponderance and is such relevant evidence as a

reasonable mind might accept as adequate to support a conclusion." *Besaw v. Sec'y of Health & Human Servs.*, 966 F.2d 1028, 1030 (6th Cir. 1992). The Commissioner's findings "as to any fact if supported by substantial evidence shall be conclusive." *McClanahan v. Comm'r of Soc. Sec.*, 474 F.3d 830, 833 (6th Cir. 2006) (citing 42 U.S.C. § 405(g)). In determining whether the Commissioner's findings are supported by substantial evidence, the court does not review the evidence *de novo*, make credibility determinations, or weigh the evidence. *Brainard v. Sec'y of Health & Human Servs.*, 889 F.2d 679, 681 (6th Cir. 1989). Even if substantial evidence or indeed a preponderance of the evidence supports a claimant's position, the court cannot overturn "so long as substantial evidence also supports the conclusion reached by the ALJ." *Jones v. Comm'r of Soc. Sec.*, 336 F.3d 469, 477 (6th Cir. 2003). This is so because there is a "zone of choice" within which the Commissioner can act, without fear of court interference. *Mullen v. Bowen*, 800 F.2d 535, 545 (6th Cir. 1986) (citing *Baker v. Heckler*, 730 F.2d 1147, 1150 (8th Cir. 1984)).

However, "a substantiality of evidence evaluation does not permit a selective reading of the record. Substantiality of evidence must be based upon the record taken as a whole. Substantial evidence is not simply some evidence, or even a great deal of evidence. Rather, the substantiality of evidence must take into account whatever in the record fairly detracts from its weight." *Brooks v. Comm'r of Social Security*, 531 F. App'x 636, 641 (6th Cir. 2013) (cleaned up).

A district court cannot uphold an ALJ's decision, even if there "is enough evidence in the record to support the decision, [where] the reasons given by the trier of fact do not build an accurate and logical bridge between the evidence and the result." *Fleischer v. Astrue*, 774 F. Supp. 2d 875, 877 (N.D. Ohio 2011) (cleaned up). Even if substantial evidence supports the ALJ's decision, the court must overturn when an agency does not observe its own procedures and

13

thereby prejudices or deprives the claimant of substantial rights. *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 546-47 (6th Cir. 2004).

### STANDARD FOR DISABILITY

Eligibility for benefits is predicated on the existence of a disability. 42 U.S.C. §§ 423(a), 1382(a). "Disability" is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 20 C.F.R. § 416.905(a); *see also* 42 U.S.C. § 1382c(a)(3)(A). The Commissioner follows a five-step evaluation process—found at 20 C.F.R. § 416.920—to determine if a claimant is disabled:

1. Was claimant engaged in a substantial gainful activity?

2. Did claimant have a medically determinable impairment, or a combination of impairments, that is "severe," which is defined as one which substantially limits an individual's ability to perform basic work activities?

3. Does the severe impairment meet one of the listed impairments?

4. What is claimant's residual functional capacity and can claimant perform past relevant work?

5. Can claimant do any other work considering her residual functional capacity, age, education, and work experience?

Under this five-step sequential analysis, the claimant has the burden of proof in Steps One through Four. *Walters,* 127 F.3d at 529. The burden shifts to the Commissioner at Step Five to establish whether the claimant has the residual functional capacity to perform available work in the national economy. *Id.* The ALJ considers the claimant's residual functional capacity, age, education, and past work experience to determine if the claimant could perform other work. *Id.*

Only if a claimant satisfies each element of the analysis, including inability to do other work, and meets the duration requirements, is she determined to be disabled. 20 C.F.R. § 416.920(b)-(f); *see also Walters*, 127 F.3d at 529.

DISCUSSION

Mr. Schunn asserts the ALJ did not properly: (1) assess whether Mr. Schunn's impairments met or equaled a Listing at Step Three of the sequential analysis or consider Mr. Schunn's headaches, diabetes, or obesity in accordance with the regulations and Social Security Rulings (SSR); (2) address Mr. Schunn's subjective complaints of pain; (3) evaluate Mr. Schunn's mental limitations; and (4) address medical opinion evidence. (Pl.'s Br., ECF #14, PageID 769-82). I address each alleged error in turn.

## I.  Step Three Evaluation

Mr. Schunn asserts the ALJ did not properly assess whether Mr. Schunn's impairments met or equaled any Listing. He argues the ALJ recited the Listing criteria and, without citing to record evidence, made a conclusory statement that Mr. Schunn did not satisfy the criteria. (*Id.* at PageID 769-70). The Commissioner responds that the ALJ considered Mr. Schunn's impairments in light of the Listings and the pertinent SSR's, and thus the ALJ's conclusion that Mr. Schunn did not meet or equal a listed impairment is supported by substantial evidence. (Comm'r's Br., ECF 17, PageID 796-97).

At Step Three of the sequential evaluation, an ALJ considers whether a claimant has a condition that is so severe as to be disabling without consideration of the claimant's age, education, and past work experience. 20 C.F.R. § 916.920(d). Impairments deemed sufficiently severe as to be disabling are detailed in the Listing of Impairments, which catalogues the criteria

necessary to meet or medically equal one of the listed impairments. *See* 20 C.F.R. Part 404, Subpart P, Appendix 1. At Step Three, it is the claimant's burden to introduce evidence to establish that his impairments meet or equal a listed impairment. 20 C.F.R. § 416.920(a)(4)(iii).

In the Sixth Circuit, an ALJ, when considering whether a claimant's impairment meets or equals a listed impairment, is required to "actually evaluate the evidence, compare it to [the relevant listed impairment], and give an explained conclusion, in order to facilitate meaningful judicial review. Without it, it is impossible to say that the ALJ's decision at step three was supported by substantial evidence." *Reynolds v. Comm'r of Soc. Sec.*, 424 F. App'x 411, 416 (6th Cir. 2011). An ALJ is not required to discuss listings a claimant clearly does not meet; however, if the record raises a substantial question as to whether a claimant could meet a listing, the ALJ should discuss that listing. *Sheeks v. Comm'r of Soc. Sec.*, 544 F. App'x 639, 641 (6th Cir. 2013). The court may look to findings elsewhere in the ALJ's decision to support his Step Three conclusions. *See generally Forrest v. Comm'r of Soc. Sec.*, 591 F. App'x. 359, 365-66 (6th Cir. 2014); *Bledsoe v. Barnhart*, 165 F. App'x. 408, 411 (6th Cir. 2006).

At Step Three in this case, the ALJ considered Listings 1.04 (disorders of the spine), 4.04 (ischemic heart disease), 4.05 (recurrent arrhythmias), 11.00 (neurological disorders), 12.04 (depressive, bipolar, and related disorders), 12.06 (anxiety and obsessive-compulsive disorders), and 12.08 (personality and impulse control disorders). I address each in turn.

### A.    Listing 1.04 (Disorders of the Spine)

To meet or equal Listing 1.04, the medical record must show evidence of nerve root compression, limited motion of the spine, and motor loss with sensory or reflex loss; spinal arachnoiditis with severe burning or painful dysesthesia resulting in the need to frequently change

positions; or lumbar stenosis resulting in the inability to ambulate effectively. 20 C.F.R. Part 404, Subpart P, Appendix 1. The ALJ determined Mr. Schunn's medical record showed "mild degenerative changes," without evidence of nerve root compression, spinal arachnoiditis, or lumbar stenosis resulting in an inability to ambulate effectively. (Tr. 20-21). Elsewhere in the ALJ's written decision, he described Mr. Schunn's history of low back pain, the treatment he sought, physical examination findings, and imaging tests showing "slight degenerative changes at L5-S1" and "lumbar spondylosis, most pronounced at L5-S1." (Tr. 26-27).

Though the ALJ's analysis of Listing 1.04 at Step Three was brief, the written decision ultimately supports his conclusion that Mr. Schunn did not meet the listing. Indeed, the medical records do not indicate nerve root compression, spinal arachnoiditis, or lumbar stenosis. Therefore, the ALJ evaluated properly Listing 1.04.

**B.      Listing 4.04 (Ischemic Heart Disease)**

Listing 4.04A, relating to ischemic heart disease, requires sign- or symptom-limited exercise tolerance testing. 20 C.F.R. Part 404, Subpart P, Appendix 1. The ALJ determined Mr. Schunn did not meet the criteria for Listing 4.04A because the record does not contain evidence of exercise tolerance testing. (Tr. 21). As such, the ALJ evaluated properly Listing 4.04.

**C.      Listing 4.05 (Recurrent Arrythmias)**

Listing 4.05, regarding recurrent arrythmia, requires evidence of "uncontrolled, recurrent episodes of cardiac syncope or near syncope, documented by resting or ambulatory electrocardiography, or other appropriate medically acceptable testing, coincident with the occurrence of syncope or near syncope." 20 C.F.R. Part 404, Subpart P, Appendix 1. The ALJ

17

determined Mr. Schunn did not meet Listing 4.05 because there was "no evidence of current cardiac syncope despite treatment." (Tr. 21).

As above, the ALJ's conclusion as to this particular listing was based on a lack of evidence in the record. Mr. Schunn does not point to evidence that even arguably favors a different conclusion, and thus does not meet his burden of proof. The ALJ properly evaluated Listing 4.05.

### D.      Primary Headache Disorder

Regarding his migraines, Mr. Schunn argues the ALJ "erred when he failed to consider the frequency of migraines in connection with Listing 11.02." (Pl.'s Br., ECF #14, PageID 773). The Commissioner responds that the ALJ "reasonably evaluated [Mr. Schunn's] headaches in accordance with SSR 19-4p, which requires the ALJ to consider whether [Mr. Schunn's] headaches medically equal the severity of the criteria in listing 11.02." (Comm'r's Br., ECF #17, PageID 798).

The Listing of Impairments does not contain a discrete listing for migraines or headaches. However, the Commissioner may find that a primary headache disorder medically equals a listing:

> Epilepsy (listing 11.02) is the most closely analogous listed impairment for [a medically determinable impairment] of primary headache disorder. While uncommon, a person with a primary headache disorder may exhibit equivalent signs and limitations to those detailed in listing 11.02 (paragraph B or D for dyscognitive seizures), and we may find that [his medically determinable impairment] medically equals the listing.

SSR 19-4p. The pertinent portions of listing criteria for 11.02 state as follows:

> **11.02 <u>Epilepsy</u>, documented by a detailed description of a typical seizure and characterized by A, B, C, or D**:
>
> . . .
>
> B. Dyscognitive seizures, occurring at least once a week for at least 3 consecutive months despite adherence to prescribed treatment; or
>
> . . .

D. Dyscognitive seizures, occurring at least once every 2 weeks for at least 3 consecutive months despite adherence to prescribed treatment; and a marked limitation in one of the following:

      1. Physical functioning; or
      2. Understanding, remembering, or applying information; or
      3. Interacting with others; or
      4. Concentrating, persisting, or maintaining pace; or
      5. Adapting or managing oneself.

20 C.F.R. Part 404, Subpart P, Appendix 1 (internal cross-references omitted).

To evaluate whether a primary headache disorder is equal in severity and duration to the criteria in 11.02(B), the ALJ considers:

a detailed description from an [acceptable medical source] of a typical headache event, including all associated phenomena (for example, premonitory symptoms, aura, duration, intensity, and accompanying symptoms); the frequency of headache events; adherence to prescribed treatment; side effects of treatment (for example, many medications used for treating a primary headache disorder can produce drowsiness, confusion, or inattention); and limitations in functioning that may be associated with the primary headache disorder or effects of its treatment, such as interference with activity during the day (for example, the need for a darkened and quiet room, having to lie down without moving, a sleep disturbance that affects daytime activities, or other related needs and limitations).

SSR 19-4p, 2019 WL 4169635 (Aug. 26, 2019).

Here, the ALJ considered Mr. Schunn's migraines under all sections of 11.00 and under SSR 19-4p, and found the severity of Mr. Schunn's migraines did not equal any listings under 11.00 because "the record is devoid of evidence of disorganization of motor function, marked limitations in [Mr. Schunn's] mental functioning or marked limitations in physical functioning, as required for all of [the] criteria for the sections under Listing 11.00 Neurological Disorders." (Tr. 21). This statement is inaccurate. *See* 20 C.F.R. Part 404, Subpart P, Appendix 1, Listing 11.00(D)(1) ("All listings in this body system, ***except for 11.02 (Epilepsy)***, . . . include criteria for disorganization of motor function....") (emphasis added). In addition, Listing 11.02(B) does not

require evidence of limitations in mental or physical functioning. *Id.* at 11.02(B) (dyscognitive seizures).

The ALJ, having apparently misapprehended the criteria related to neurological disorders, erred in his evaluation of whether Mr. Schunn's migraines equal Listing 11.02(B) or (D). This does not result in remand. There can be no doubt Mr. Schunn has migraines; however, the ALJ's error is harmless because Mr. Schunn failed to meet his burden to show the severity of his migraines equaled Listing 11.02(B) or any other listed impairment. Though Mr. Schunn and his wife offer a description of his migraines, no acceptable medical source has documented any such migraines, and Mr. Schunn has not sought treatment for migraines since his alleged onset date.

### E.     Diabetes Mellitus

Mr. Schunn next takes issue with the ALJ's consideration of diabetes mellitus, noting "the ALJ did not consider [SSR 14-2p]. Rather, he found that there was no evidence of peripheral neuropathy or diabetic retinopathy . . . ." (Pl.'s Br., ECF 14, PageID 771). SSR 14-2p guides the evaluation of disability claims arising from diabetes mellitus. Like migraines, diabetes mellitus is not a specifically listed impairment. The effects of diabetes mellitus, however, may meet or medically equal the criteria of a listing in an affected body system. SSR 14-2p, 2014 WL 2472008 (June 2, 2014). There is no requirement that this particular SSR be cited in conducting an analysis that follows its guidance. *See Dodson v. Comm'r of Soc. Sec.,* No. 5:18-CV-02263, 2019 WL 6841771, at *2 (N.D. Ohio Dec. 16, 2019).

Here, the ALJ's Step Three analysis does not discuss diabetes mellitus or evaluate the condition under any affected body system. However, at Step Four, the ALJ stated:

> In regards to the claimant's diabetes, the evidence shows the claimant was diagnosed with hypertriglyceridemia in 2010 and diabetes in 2013. The claimant's

20

hypertriglyceridemia appeared to stem from family history. Treatment notes from May 2017 shows that the claimant's diabetes is well-controlled with his Fenofibrate medication. In September 2017, the claimant reported no significant symptoms related to this diabetes. While he was assessed as having severe hypertriglyceridemia, he was taking Lovaza and Fenofibrate therapy and was recommended a low carb/low fat diet. At a routine check-up in January 2018, the claimant reported no diabetic neuropathy or issues with his feet. There was no evidence that the claimant had any problems managing his diabetes. Evidence from March and June 2018 shows the claimant had good control of his A1c. He stated that he was checking his blood sugars at home, had no issues with paresthesias, and was taking his medications regularly. There is no evidence of peripheral neuropathy or diabetic retinopathy. Considering the objective medical evidence, the undersigned finds that the claimant would be limited in his ability to work around hazards.

(Tr. 27-28). This evaluation at Step Four shows that the record does not raise a substantial question whether Mr. Schunn's diabetes mellitus equals the severity of another listing. Therefore, the ALJ did not err at Step Three when evaluating Mr. Schunn's diabetes mellitus.

### F.     Obesity

Mr. Schunn claims the ALJ committed harmful error by not considering the totality of his impairments in combination with his obesity. (Pl.'s Br., ECF #14, PageID 772). On the contrary, the ALJ concluded that Mr. Schunn's obesity, in combination with his other impairments, did not medically equal the criteria of any listed impairment. Elsewhere in the decision, the ALJ provided limitations to the residual functional capacity assessment to accommodate Mr. Schunn's obesity, including restrictions for no climbing and only occasional balancing, stooping, kneeling, crouching, and crawling. (Tr. 24, 28; *see also* SSR 19-2p). Additionally, Mr. Schunn has not identified other evidence that would support a finding that his obesity requires further accommodation than that found in the residual functional capacity assessment.

### G.     Mental Impairments

Finally, Mr. Schunn argues the ALJ erred in his evaluation of Mr. Schunn's mental impairments under Listings 12.04 for depressive, bipolar, and related disorders, 12.06 for anxiety

21

and obsessive-compulsive disorders, and 12.08 for personality and impulse-control disorders. (Pl.'s Br., ECF #14, PageID 773). He takes issue with the "paragraph B" analysis, claiming the ALJ erred by failing to discuss the findings in Dr. Woodworth's consultative examination report. (*Id.* at PageID 774). Additionally, Mr. Schunn claims the ALJ improperly disregarded Mrs. Schunn's Function Report. (*Id.*).

Mr. Schunn's argument is without merit. The ALJ must consider, but is not required to discuss, all the evidence submitted, and an ALJ's failure to cite specific evidence does not indicate that it was not considered. *Daniels v. Comm'r of Soc. Sec.*, 152 F. App'x. 485, 489 (6th Cir. 2005). Further, the ALJ discussed Dr. Woodworth's findings elsewhere in his decision. (Tr. 29). Mr. Schunn points to the same findings to support his contention that he is more than moderately limited. (Tr. 29; Pl.'s Br., PageID 773-74). Mr. Schunn invites the court to re-weigh the evidence, which is not permitted under the applicable standard of review. He has not identified an error in the ALJ's analysis, nor has he shown that the ALJ's conclusions are not supported by substantial evidence.

## II. Evaluation of Symptoms Under SSR 16-3p

Next, Mr. Schunn asserts the ALJ erred by failing to consider Mrs. Schunn's third-party Function Report and that failure, in turn, led to an improper evaluation of Mr. Schunn's statements about the intensity, persistence, and limiting effects posed by his impairments. (Pl.'s Br., ECF #14, PageID 779-80). In response, the Commissioner claims the ALJ properly considered the objective evidence, compared it to Mr. Schunn's subjective complaints and testimony in accordance with the regulations and SSR 16-3p, and determined the objective medical evidence

did not support the degree of his subjective reports of pain. (Comm'r's Br., ECF #17, PageID 802-03).

Social Security Ruling 16-3p instructs adjudicators to evaluate an individual's symptoms using a two-step process. The adjudicator first determines whether the individual has a medically determinable impairment that could reasonably be expected to produce the individual's alleged symptoms. SSR 16-3p, 2017 WL 5180304 (Oct. 25, 2017). At step two, the adjudicator evaluates the intensity and persistence of an individual's symptoms such as pain to determine the extent to which an individual's symptoms limit his ability to perform work-related activities. *Id.* The adjudicator is instructed to consider the entire case record, "including the objective medical evidence; an individual's statements about the intensity, persistence, and limiting effects of symptoms; statements and other information provided by medical sources and other persons; and any other relevant evidence in the individual's case record. *Id.* Non-medical sources include the individual's family and friends. *Id.* The adjudicator is instructed to consider any personal observations of the individual "in terms of how consistent those observations are with the individual's statements about his [ ] symptoms as well as with all the evidence in the file. *Id.*

Here, the ALJ's decision states:

After careful consideration of the evidence, the undersigned finds that the claimant's medically determinable impairments could reasonably be expected to cause the alleged symptoms; however, the claimant's statements concerning the intensity, persistence and limited effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record for the reasons explained in this decision.

(Tr. 25). The ALJ's written decision does not cite to Mrs. Schunn's function report. However, Mr. Schunn's hearing testimony and Function Report, both of which were noted and discussed by the ALJ, allege the same or similar symptoms, the ineffectiveness of medication to alleviate pain, the

23

necessity for Mr. Schunn to lie down in a dark room until his migraine recedes, and the aid his wife provides. (*See* Tr. 23, 25; Tr. 262-70; Tr. 293-300). The ALJ considered those assertions from Mr. Schunn himself, and found them inconsistent with the objective medical evidence. (Tr. 25). Having done so, the ALJ was not required to discuss separately Mrs. Schunn's Function Report because her assertions, being very similar to those in Mr. Schunn's Function Report, would reflect the same inconsistencies arising from the objective medical evidence. The ALJ did not err in his evaluation of Mr. Schunn's symptoms and his conclusion that Mr. Schunn's statements about the intensity, persistence, and limiting effects of his impairment are not consistent with the objective medical evidence is supported by substantial evidence.

## III.   Medical Opinion Evidence

Mr. Schunn contends the ALJ did not properly evaluate the medical opinions from the state agency medical consultants, or Drs. Woodworth, Bircher, and Hanna. I address each in turn.

### A.   State Agency Medical Consultant

As to the state agency medical consultant, Mr. Schunn argues that, on reconsideration, the consultant did not review Mr. Schunn's October 2018 MRI documenting spondylosis and disc protrusion and the "matter should be remanded to consider the effects of the documented problems evidenced by the MRI." (Pl.'s Br., ECF #14, PageID 778). In response, the Commissioner points to the ALJ's discussion of Mr. Schunn's back impairment and his specific reference to the October 2018 MRI and its contents. (Comm'r's Br., ECF 17, PageID 811).

The Sixth Circuit holds that an ALJ may rely on medical opinions from physicians who have not reviewed the entire record so long as the ALJ considers the post-dated evidence in formulating his opinion. *See, e.g., McGrew v. Comm'r of Soc. Sec.*, 343 F. App'x 26, 32 (6th Cir.

24

2009) (indicating that an ALJ's reliance upon state agency reviewing physicians' opinions that were outdated was not error where the ALJ considered the evidence that was developed post-dating those opinions); *see also Ealy v. Comm'r of Soc. Sec.*, 594 F.3d 504, 513 (6th Cir. 2013) ("Even if [a State agency physician's] RFC was completed without knowledge of these issues, however, the record reflects that the ALJ considered them."); *Patterson v. Comm'r of Soc. Sec.*, No. 1:16-cv-110, 2017 WL 914272, at *10 (N.D. Ohio Mar. 8, 2017) ("An ALJ may rely on a state agency reviewer who did not review the entire record, so long as the ALJ also considers the evidence post-dating the opinion.").

Mr. Schunn's argument is meritless. The ALJ found the state agency medical consultants persuasive because their opinions were consistent with the medical evidence. (Tr. 28). The ALJ additionally considered the medical evidence not reviewed by the consultants—the MRI showing lumbar spondylosis. (Tr. 27).

### B.    Drs. Hanna and Bircher

Mr. Schunn argues the ALJ did not provide a coherent explanation for finding Dr. Hanna's and Dr. Bircher's opinions unpersuasive. (Pl.'s Br., ECF #14, PageID 776). The ALJ determined Dr. Hanna's opinion was unpersuasive because the medical evidence "shows normal gait, no treatment for migraines or his heart condition, and controlled diabetes and sleep apnea." (Tr. 29). He determined Dr. Bircher's opinion was unpersuasive because the medical evidence did not support "such extreme limitations" and that the record shows normal gait and mostly normal range of motion. (*Id.*)

For claims filed on or after March 27, 2017, an ALJ evaluates medical opinion evidence using a new paradigm. *See* 20 C.F.R. § 416.920c. Mr. Schunn filed his claim on May 31, 2018;

thus, § 416.920c controls. It provides the ALJ "will not defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) or prior administrative medical finding(s)" including those from the claimant's medical sources. The ALJ is not required to place medical opinions into a hierarchy and is not required to give a treating source controlling weight. *Id.* Instead, the ALJ must articulate the consideration given to the medical opinions in the record, grounded in the two "most important factors": supportability[2] and consistency. [3] 20 C.F.R. § 416.920c(b)(2).

Although the regulations presented in § 416.920c eliminate physician hierarchy, deference to specific medical opinions, and assigning specific weight to a treating physician's medical opinion, an ALJ must still articulate the medical opinions were considered and how they were determined to be persuasive. *Houston v. Saul*, No. 1:20-CV-1371, 2021 WL 2635376, at *11 (N.D. Ohio June 25, 2021). The court reviews this articulation of persuasiveness to evaluate whether the ALJ properly considered the factors as set forth in the regulations. *Id.* An "ALJ's failure . . . to meet these minimum levels of articulation frustrates [the] court's ability to determine whether [claimant's] disability determination is supported by substantial evidence." *Vaughn v. Comm'r of Soc. Sec.*, No. 20-1119, 2021 WL 3056108, at *11 (W.D. Tenn. July 20, 2021).

Here, the ALJ found Dr. Hanna's opinion inconsistent with the other evidence in the record. It is unclear why medical evidence showing normal gait is relevant to an opinion

---

[2]     "The more relevant the objective medical evidence and supporting explanations presented by a medical source are to support his medical opinion(s) or prior administrative medical finding(s), the more persuasive the opinion(s) and finding(s) will be." 20 C.F.R. §§ 404.1520c(c)(1), 416.920c(c)(1).

[3]     "The more consistent a medical opinion(s) or prior administrative medical finding(s) is with the evidence from other medical sources and nonmedical sources in the claim, the more persuasive the opinion(s) and finding(s) will be." 20 C.F.R. §§ 404.1520c(c)(2), 416.920c(c)(2).

containing limitations related only to mental health, but Mr. Schunn's lack of treatment for his migraines, and the well-controlled nature of his diabetes and sleep apnea is sufficient articulation as to why he found Dr. Hanna's opinion inconsistent with other evidence in the record.

As to Dr. Bircher's opinion, the ALJ found it inconsistent with other evidence of the record, namely, findings of normal gait and mostly normal range of motion. While brief, the ALJ's explanation that the opinion was inconsistent with the other evidence of record is sufficient articulation.

###    C.    Dr. Woodworth

Dr. Woodworth performed a consultative psychological evaluation at the behest of Ohio's Division of Disability Determination. (Tr. 564). The ALJ found Dr. Woodworth's opinion persuasive because "it is the only evidence in the record that measures the claimant's mental functioning and is based on a foundation of specialized knowledge of psychiatry and the Social Security regulations." (Tr. 29). Mr. Schunn contends the ALJ erred by failing to include Dr. Woodworth's opined limitation to simple tasks in the residual functional capacity assessment. (Pl.'s Br., ECF #14, PageID 777). The Commissioner responds that "Mr. Schunn's consultative examination did not note any difficulties with thought content, speech, understanding, fund of knowledge, or judgment that required a limitation to simple, rather than routine, work." (Pl.'s Br., ECF #14, PageID 807).

The determination of an individual's residual functional capacity is an issue reserved for the Commissioner. 20 C.F.R. §§ 404.1527(d), 416.927(d). Even so, substantial evidence must support the Commissioner's finding of residual functional capacity. *Berry v. Astrue*, No. 1:08-cv-411, 2010 WL 3730983, at *8 (S.D. Ohio June 18, 2010). An ALJ is not required to adopt a state

agency opinion verbatim, even if the ALJ concludes the opinion was persuasive. *See, e.g., Hankinson v. Comm'r of Soc. Sec.*, No. 2:18-CV-58, 2020 WL 240812, at *2 (S.D. Ohio Jan. 16, 2020) (citing *Salisbury v. Comm'r of Soc. Sec.*, No. 5:11-CV-2277, 2013 WL 427733, *7 (N.D. Ohio Feb. 1, 2013)). Nevertheless, where an ALJ determines a medical source opinion is persuasive, the ALJ must incorporate the limitation in that finding or provide a sufficient explanation for declining to do so. *Slone v. Comm'r of Soc. Sec.*, No. 2:20-cv-4850, 2021 WL 4901498, at *5 (S.D. Ohio Oct. 21, 2021) (citing *Hankinson,* 2020 WL 240812 at *2). Further support for this proposition comes from the Social Security Administration's own policy interpretation. Social Security Ruling 96-8p explicitly states: "The RFC assessment ***must always*** consider and address medical source opinions. If the RFC assessment conflicts with an opinion from a medical source, the adjudicator *must* explain why the opinion was not adopted." SSR 96-8p (emphasis added).

Here, the ALJ concluded Dr. Woodworth's opinions were persuasive but did not include a limitation addressing Dr. Woodworth's opinion that Mr. Schunn's attention and concentration for *simple* tasks is average, but poor in relation to complex tasks, and that Mr. Schunn will probably have more difficulty understanding, remembering, and carrying out instructions and more difficulty maintaining attention and concentration to perform simple and multi-step tasks. The ALJ did not offer any explanation why the limitation to performing simple tasks was not adopted and, therefore, I cannot determine if the ALJ's residual functional capacity assessment is supported by substantial evidence.

At Step Four of the sequential analysis, the ALJ determined Mr. Schunn could not perform his past relevant work. (Tr. 29). The burden then shifted to the Commissioner to establish whether Mr. Schunn has the residual functional capacity to perform available work in the

national economy. The ALJ did not incorporate the "simple tasks" limitation into his hypothetical to the VE, and therefore, I am unable to determine whether the inclusion of the limitation would have affected the ultimate disability determination. The ALJ's error is not harmless and requires remand for consideration of Dr. Woodworth's opinion in conjunction with the residual functional capacity assessment. I recommend the District Court instruct the ALJ to consider Dr. Woodworth's opinion and, if the ALJ determines Mr. Schunn should not be limited to performing simple tasks, to articulate in a sufficient manner why such a limitation is not necessary.

### CONCLUSION AND RECOMMENDATION

Following review of the arguments presented, the record, and the applicable law, I recommend the District Court **REVERSE** the Commissioner's decision denying SSI and **REMAND** this matter for proceedings consistent with this recommendation.

Dated: November 10, 2021

DARRELL A. CLAY
UNITED STATES MAGISTRATE JUDGE

**ANY OBJECTIONS to this Report and Recommendation must be filed with the Clerk of Court within fourteen days of service of this notice. Failure to file objections within the specified time WAIVES the right to appeal the Magistrate Judge's recommendation. See *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981); *Thomas v. Arn*, 474 U.S. 140 (1985).**